IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY GLENN CLIFTON, | § | |
| #56582-177, | § | |
| Movant, | § | |
| | § | No. 3:21-cv-02507-B (BT) |
| v. | § | No. 3:17-cr-00641-B-2 |
| | § | |
| UNITED STATES of AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Johnny Glenn Clifton, a federal prisoner, filed a *pro se* motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should deny Clifton's § 2255 motion.

**Background**

Clifton pleaded guilty to conspiracy to commit wire fraud under 18 U.S.C. § 371, and the District Judge sentenced him to 160 months in prison. Specifically, from November 2015 to March 2017, Clifton and a conspirator, Joshua Pugh, "created and engaged in a lavish and elaborate scheme to defraud [the victim] out of approximately $1 million dollars. . ." CR ECF No. 43 at 2.[1] "The scheme included

_____

[1] For purposes of these Findings, Conclusions, and Recommendation, "CV ECF" refers to this civil action, case number 3:21-cv-02507-B-BT, and "CR ECF" refers

an effort to convince [the victim]—who was a devout, religious, and sheltered cabinet maker in rural Texas—that Pugh was the wealthy scion of a powerful and well-known family, that Pugh and Clifton were members of the "Illuminati," and [that Clifton and Pugh were] founding officers of an elite real estate company known as "Sectors Global Management," which did not exist. CR ECF No. 43 at 2. Clifton and Pugh "used extravagant means to effectuate their scheme to defraud [the victim], including the use of helicopters, caravans, bodyguards, chauffeurs, falsified documentation, and contrived video chats and teleconferences with purported world leaders. Pugh and Clifton employed emotional and psychological pressure on [the victim]." CR ECF No. 43 at 2.  As a result of the fraud, the victim invested approximately $1 million with Sectors. CR ECF No. 43 at 8.

After he was sentenced, Clifton filed a notice of appeal, but, after reviewing his appellate counsel's *Anders* brief and the relevant portions of the record, the Fifth Circuit dismissed the appeal because it "present[ed] no nonfrivolous issue for appellate review." *See United States v. Clifton*, No. 19-10947 (5th Cir. July 7, 2021); *see also* CR ECF No. 123. The Fifth Circuit declined to consider Clifton's claims of ineffective assistance of counsel without prejudice to him raising those claims on collateral review.

———————————————

to the underlying criminal action, case number 3:17-cr-00641-B-2. CR ECF No. 43 is the factual resume. As discussed below, Clifton admitted the veracity of the facts included in the factual resume.

Clifton then filed this § 2255 motion, along with a supporting memorandum a few weeks later. CV ECF No. 2; CV ECF No. 5. He makes the following claims for relief:

1. He was denied effective assistance of counsel (Ground One) when his trial counsel:

   a. "refused to investigate [his] side of the story and claims of duress, intimidation and actual innocence,"

   b. did not seek to correct inaccuracies in the indictment, factual resume, and presentence report (PSR),

   c. "did not properly explain the elements of the crime of Wire Fraud" to him,

   d. did not advise him that "there is present authority to have a PSR prepared prior to the acceptance of the plea,"

   e. did not inform him that "he had any right to the results of the court-ordered mental evaluation performed in February and March of 2018,"

   f. did not give him "all of the discovery documents" for review prior to pleading guilty,

   g. "did not argue for the proper accounting of both § 3553 factors or applicable 5H1 and 5K2 factors,"

   h. "failed to maintain an adversarial role,"

   i. did not give him a copy of the PSR Addendum until the day of the sentencing hearing,

   j. failed to dispute the "improper enhancements for Misrepresentation, Vulnerable Victim[,] Obstruction of Justice," and the loss amount,

   k. erroneously advised him that his "recommended sentence would be in the range of 41-51 months at the most," and

3

      l.  failed to object to the prosecutor's purportedly inaccurate statements at sentencing.

2. His trial counsel "coerced" him to plead guilty by "pressuring him and his family with threats of a much longer sentence and the expectation of a near 'time-served' sentence" if he would sign the plea agreement. (Ground Two).

3. His guilty plea was not knowing and voluntary because his attorney told him that "his maximum sentence would be 46 months." (Ground Three).

4. The indictment, factual resume, and PSR contain inaccurate and unreliable information. (Ground Four).

CV ECF No. 2 at 7-8, 11-13. The Government filed a response. CV ECF No. 6. Clifton filed a reply. CV ECF No. 9.

## Legal Standards and Analysis

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A.    Clifton's ineffective assistance of counsel claims fail under *Strickland*.

To prevail on a claim of ineffective assistance of counsel (IAC), Clifton must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial.

4

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under *Strickland*, a court's review of counsel's performance should be "highly deferential." *Id.* This is so because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]"*Id.* And "[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *see also United States v. Scott*, 11 F.4th 364, 373 (5th Cir. 2021) (recognizing there are "countless ways to provide effective assistance in any given case") (quoting *Strickland*, 466 U.S. at 689).

Even if Clifton proves his counsel's performance was deficient, he must still prove prejudice. To demonstrate prejudice, he must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing

'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

"In the context of sentencing, prejudice means that but for his counsel's error, his sentence would have been significantly less harsh." *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam); *see also Glover v. United States*, 531 U.S. 198, 200 (2001) ("[I]f an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"); *United States v. Seyfert*, 67 F.3d 544, 548-49 (5th Cir. 1995) ("To satisfy the prejudice prong of the *Strickland* test in the context of a non-capital sentencing proceeding, a defendant must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh.") (citing *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995); *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)); *see also Potts v. United States*, 566 F.Supp.2d 525, 537 (N.D. Tex. 2008).

### (i)    Failure to Investigate

Clifton claims that his counsel "refused to investigate [his] side of the story and claims of duress, intimidation, and actual innocence." CV ECF No. 2 at 7.

To establish an IAC claim based on the failure to investigate, a movant "must allege with specificity what the investigation would have revealed and how it would have changed the outcome" of the proceeding. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

Liberally construing his pleadings, Clifton seems to suggest that further investigation would have countered an FBI agent's testimony at the sentencing hearing that there were "recordings, handwritten notes . . . victim testimony . . . and spouse's testimony" showing that Clifton claimed that he and Pugh controlled organizations such as the FBI, the CIA, the NSA, and OPEC.

But Clifton has offered nothing (not even his own sworn statement) in support of his claim that investigation would have refuted the FBI agent's testimony. It is based only on his conclusory, unsupported assertions, so this claim does not warrant an evidentiary hearing or otherwise justify relief. *See*, *e.g.*, *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *see also United States v. Duran*, 934 F.3d 407, 411 (5th Cir. 2019) (explaining that, to obtain an evidentiary hearing, a movant must provide "'independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties'") (citing *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018)).

Clifton also suggests that further investigation would have shown that he did not obstruct an ongoing investigation because he did not know that one was ongoing. Central to the Government's argument on this issue was a reference in the PSR to a phone call that Clifton and Pugh made—in the presence of the victim—

7

in which Clifton and Pugh referenced an ongoing investigation. CR ECF No. 61-1 at 8-9. Clifton claims now that he never made such a telephone call and was never aware of it. Again, though, Clifton offers nothing other than conclusory allegations and bald assertions to rebut the record evidence on this issue, which is not sufficient. *See*, *e.g.*, *Duran*, 934 F.3d at 411 (citation omitted).

And finally, Clifton claims that, had his counsel investigated more, he would have discovered information bearing on "other factors at sentencing that could have made a material difference . . ." CV ECF No. 5 at 13. He references USSG § 5H1.6 (loss of essential financial support to the defendant's family), § 5K2.20 (aberrant behavior), and § 5K2.12 (coercion and duress).

The gist of this argument is that Clifton was an unwitting pawn in a scheme that Pugh concocted. He references "hundreds of examples of threats, intimidation and fear" that he was "subjected to" by Pugh in furtherance of the scheme. CV ECF No. 5 at 16.

There are at least two problems with this argument. First, it is conclusory and unsupported by any evidence, not even sworn statements from Clifton. *See Ross*, 694 F.2d at 1011. Second, there is no indication that the District Judge would have given a more lenient sentence if she had been presented with Clifton's claim that he was duped or coerced into the scheme. In fact, Clifton made a similar argument during sentencing. The District Judge asked "[w]hat happened?," and Clifton responded, "I associated myself with some wrong people, and I bought into the machinations of other people, and I followed people that I should not have."

CR ECF No. 84 at 29. This argument did not sway the District Judge. *See* CR ECF No. 84 at 36 ("Okay, Mr. Clifton, I listened to you, and I really didn't hear much remorse. I mean, I heard that you got involved with other people."). And there is no reason to believe the District Judge would have been inclined to be more lenient had Clifton gone into further detail about his lack of culpability for the scheme.

Clifton has failed to show that his counsel was ineffective for not investigating more.

> *(ii)    Failure to correct inaccuracies in the indictment, factual resume, and PSR*

Clifton claims that his trial counsel was ineffective for not contesting a variety of supposed inaccuracies in the indictment[2], factual resume, and PSR. Initially, as to the factual resume, this claim must fail because Clifton claimed under oath that he read the entire factual resume, "front page to back," and that he did not "dispute any of the facts."[3] CR ECF No. 83 at 16.

"Ordinarily a defendant will not be heard to refute his testimony given under oath." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). "Solemn declarations in open court carry a strong presumption of verity," forming a

---

[2] Clifton does not identify any inaccuracies in the indictment.

[3] Clifton does not explain what the factual inaccuracies are in his briefing. He instead points the Court to a letter brief that he wrote the United States Fifth Circuit Court of Appeals in response to the *Anders* brief that lists the supposed inaccuracies in the resume, which, for the sake of brevity, are not recounted here. CV ECF No. 9 at 17-22.

"formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

In response, Clifton argues that his attorney coerced him into pleading guilty and admitting to the veracity of the factual resume by promising a relatively lenient sentence. He also says that the Court should ignore his sworn statements that his factual resume was correct and that his guilty plea was knowing and voluntary because he was frightened "and in uncertain and unfamiliar terrain," he was withdrawing from opiates, and he thought that admitting the veracity of the factual resume under oath was just part of a "ritualistic process where both sides pretend there has been no promises [sic] or assurances given of a specific outcome and declarations are made by the defendant in court in exchange for the Court accepting the plea agreement." CV ECF No. 9 at 8.

But, for the reasons set out below in relation to Clifton's claim that his plea was involuntary, the Court finds these arguments unpersuasive. The Court should hold Clifton to what he said under oath and not credit the after-the-fact, self-serving allegations to the contrary that he presents here. Because Clifton cannot establish that there were any inaccuracies in his factual resume, he cannot establish that his attorney was ineffective for failing to make that argument.

As for the PSR, as best the Court can tell, Clifton disputes the PSR's representations: (1) that Clifton called security personnel after the start of the investigation and asked whether it was true the security personnel could not work

10

for Clifton and Pugh  because of the ongoing investigation (showing that he was aware of an ongoing investigation and supporting the obstruction of justice enhancement); and (2)  that Clifton identified himself as someone who worked for, controlled, or was acting on behalf of the FBI and/or OPEC.

Clifton has not shown that an objection to the PSR on these issues would have had merit and therefore fails to show that his counsel was ineffective. A PSR generally "bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines." *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (citation omitted). "[T]he court can adopt facts contained in a PSR without inquiry if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994). A defendant's rebuttal evidence must demonstrate that the information contained in the PSR is "'materially untrue, inaccurate, or unreliable. . .'" *Huerta*, 182 F.3d at 364 (citing *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

Here, the PSR had an adequate evidentiary basis. The information in it was taken from the indictment, the factual resume (the accuracy of which, as discussed, Clifton admitted), investigative reports prepared by an FBI agent, and interviews that the agent conducted. CR ECF No. 61-1 at 4. Thus, in the absence of rebuttal evidence, Clifton cannot show his counsel was ineffective for not objecting to the purported factual inaccuracies listed above.

He identifies no such rebuttal evidence. He appears to claim that, had his counsel investigated more, he would have discovered that Clifton did not engage in the conduct that he disputes. But, as discussed above, there is nothing to support that other than Clifton's conclusory assertions. And it is well-established in this context that "[t]he district court is free to disregard the defendant's unsworn statements that the PSR is unreliable." *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994) (per curiam) (citing *United States v. Gracia*, 983 F.2d 625, 630 (5th Cir. 1993)). Because he has not identified any rebuttal evidence his counsel could have proffered, he has not shown his counsel was ineffective for not presenting any.

Clifton's claim that his counsel was ineffective for not contesting supposedly unreliable and inaccurate information in the indictment, factual resume, and/or PSR is meritless.

        *(iii)*      *Failure to properly explain elements of wire fraud and erroneous advice concerning length of the sentence*

Clifton claims that his counsel failed to explain the elements of wire fraud to him and promised him a sentence in the 41-51 month range. But given Clifton's declarations in open court, he cannot succeed on these claims.

Specifically, Clifton testified at the rearraignment hearing that he understood the nature of the charges against him and that he was fully satisfied with his attorney and the representation and advice he had been given. CR ECF

No. 83 at 4. Clifton stated that he had no questions for the Court after the prosecutor read aloud the elements of his conviction. CR ECF No. 83 at 17-18.

Regarding the alleged promise for a sentence in the range of 41-51 months, Clifton testified that no one had made any promises to him that were not in the plea agreement. CR ECF No. 83 at 7-8. And in the written plea agreement, Clifton affirmed that he understood that no one could predict with certainty the outcome of the Court's consideration of the guidelines in this case, that he would not be allowed to withdraw his guilty plea if his sentence was higher than expected, that he fully understood that the actual sentence imposed—as long as it was within the statutory maximum—was solely in the discretion of the Court, and that there had been no guarantees or promises from anyone as to what sentence the Court would impose. CR ECF No. 51 at 3, 6.

Again, "[o]rdinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) (per curiam)). And a signed and written plea agreement is "entitled to a presumption of regularity" and "accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985). Such refutations may only be heard on collateral review when the movant "offers specific factual allegations supported by the affidavit of a reliable third person. . ." *Sanderson*, 595 F.2d at 1021. "In other words, when a Section 2255 movant makes allegations that conflict with his sworn testimony at the plea hearing, he must produce 'independent indicia of the likely

merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties. . .'" *United States v. Morrison*, 2016 WL 5886697, at *6 (W.D. Tex. Aug. 10, 2016) (citing *Cervantes*, 132 F.3d at 1110) (citing, in turn, *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).

And, regarding a claim that counsel promised a certain sentence in particular, the evidence should establish "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *Cervantes*, 132 F.3d at 1110 (citing *Harmason*, 888 F.2d 1527, 1529 (5th Cir. 1989)).

Here, Clifton submitted the unsworn statement of his mother. CV ECF No. 9 at 12-15. But the statement says nothing about whether Clifton's counsel explained the elements of the offense to him. Because the claim that Clifton's attorney failed to explain the elements of the offense to him is refuted by record evidence, it is meritless.

Regarding the promise of a sentence of 41-51 months, Clifton's mother's statement lacks the requisite specificity. At most, she states that Clifton's counsel told her that if she could convince Clifton to sign the plea agreement, he would "probably get time served." CV ECF No. 9 at 12. There is no indication of a promise of a 41-51 month sentence, much less a description of the exact terms of the promise, exactly when and where the promise was made, and the precise identity of an eyewitness to the promise. So, given his declarations on the record that no one had promised him anything in return for his guilty plea, and given the lack of

14

reliable evidence undermining those declarations, Clifton cannot establish that his counsel was ineffective for allegedly promising a certain sentence.[4]

### (iv)    Failure to maintain adversarial role

Clifton argues that this counsel did not maintain an adversarial role, but the record belies this claim. Clifton's counsel objected to the PSR and offered argument on most of those objections during the sentencing hearing. *See* CR ECF Nos. 68, 84. Clifton has not shown that his counsel abandoned his adversarial role.

### (v)    Failure to provide discovery documents and failure to argue for § 3553 factors.

Regarding his claim that his attorney should have given him discovery documents, Clifton never identifies these documents or explains how they might have impacted his proceedings, so he has failed to show ineffective assistance of counsel in relation to them.

Clifton claims his counsel should have "argued for the proper accounting of [the] § 3553 factors.. . ." But this allegation is too conclusory to support habeas relief. Clifton fails to identify the specific argument on this issue that he claims his

---

[4] Even if the claim could be construed as alleging, not a specific promise, but incompetent advice about the potential length of the sentence that Clifton might receive, it is still meritless given the unrefuted record evidence showing that Clifton was aware that the District Judge would make the ultimate sentencing determination. *See*, *e.g.*, *Kelley v. United States*, 2020 WL 8262814, at *5-6 (N.D. Tex. Dec. 23, 2020), *rec. accepted* 2021 WL 242971 (N.D. Tex. Jan. 25, 2021) (citing *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *United States v. Mackay*, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007); *Gray v. United States*, 2019 WL 3306012, at *4 (W.D. Tex. July 23, 2019); *United States v. Collins*, 2009 WL 910842, at *6 (S.D. Miss. Apr. 1, 2009)).

trial counsel should have made. *See*, *e.g.*, *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir. 1990) ("Although *pro se* habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.") (internal quotation marks and citation omitted); *United States v. Woods,* 870 F.2d 285, 288, n.3 (5th Cir. 1989) (noting that conclusory claims are insufficient to entitle a habeas corpus petitioner to relief).

### (vi)    Failure to "vigorously" dispute enhancements

The Court, in sentencing Clifton, found that enhancements for misrepresentation, vulnerable victim, and obstruction of justice applied. Clifton claims that his counsel should have disputed these enhancements more vigorously and with "materials and compelling information not presented to the Court." CV ECF No. 2 at 11. But Clifton fails to show either ineffective assistance of counsel or prejudice in relation to these claims.

Starting with the misrepresentation enhancement under USSG § 2B.1(b)(9)(A), Clifton argues that he never identified himself to the victim "as one who worked for, controlled, or was acting on behalf of FBI, OPEC, or any other charitable, educational, religious, or political organization or a government agency." CV ECF No. 5 at 7. But the PSR says otherwise. CR ECF No. 61-1 at 12-13. And as discussed, "[g]enerally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." *United States v.*

16

*Ayala*, 47 F.3d 688, 690 (5th Cir. 1995) (internal citations omitted). Further, the PSR was supported by testimony at the sentencing hearing from an FBI agent. CR ECF No. 84 at 9-10.

Against the PSR and that testimony, and without any evidence to the contrary, it would have been futile for Clifton's attorney to object that the misrepresentation enhancement was inapplicable; and, relatedly, Clifton cannot show that such an argument would have succeeded, so he fails to show prejudice. *See Koch*, 907 F.2d at 527 (counsel not required to make futile objections).

Regarding the vulnerable victim enhancement, this applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." USSG § 3A1.1(b)(1). "Vulnerable victim" in this context means a person (A) who is a victim of the offense of conviction and any other relevant conduct; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct. USSG § 3A1.1 cmt. 2. The PSR concluded that this enhancement applied because of the victim's "sheltered lifestyle" as a deeply religious owner of a cabinet making shop in rural Texas with limited contact with the outside world beyond his family members and people within his religious community. CR ECF No. 61-1 at 13. And the FBI agent supported that conclusion with testimony at the sentencing hearing that the victim was sheltered—geographically, socially, and personally. CR ECF No. 84 at 11.

Clifton argues that his attorney should have argued that the victim was not vulnerable because the victim was involved with other investments, had a

"storefront" in the Dallas metroplex, had customers outside of his church community in affluent areas of the Dallas metroplex, "regularly use[d] a computer, sen[t] emails, browse[d] the internet, use[d] a cellular phone, ha[d] substantive banking relationships in his community and invest[ed] in private placements of securities and attends investment seminars" in the Dallas metroplex, and because he tried to obtain a restaurant franchise. CV ECF No. 5 at 8.

But, as the Government notes, Clifton's attorney *did* make this argument in response to the PSR. *See* CR ECF No. 68 at 5. Thus, Clifton cannot show that his counsel was ineffective for not challenging the vulnerable victim enhancement. And, because this argument was already before the Court, which rejected it, Clifton fails to show that further argument on the issue would have been successful and therefore cannot show prejudice.

Clifton argues that his attorney should have contested the "obstruction of justice" enhancement. That enhancement applies where "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (b) a closely related offense. . ." USSG § 3C1.1.

The PSR concluded that the enhancement applied and referenced several incidents after a law enforcement investigation was underway in which Clifton attempted to coerce the victim into stopping the investigation by, for example,

threatening legal action and negative publicity to his church, representing that powerful people were upset with the victim, hiring a private investigator to watch the victim and telling the victim that the investigator was a representative of Sectors, directing him to sign non-disclosure agreements, and telling the victim that he should break ties with his private attorney. CR ECF No. 61-1 at 14-15.

Clifton argues here, however, that at the time of those acts, he was not yet aware that there was an investigation and advises that he is "relatively confident" that the investigation had not started at that time. CV ECF No. 5 at 10.

But, as explained, Clifton's conclusory and unsupported assertions on this issue are insufficient to rebut the PSR. According to the PSR, on February 4, 2017, Clifton met with the victim for over four hours and explicitly referenced the ongoing investigation. CR ECF No. 61-1 at 19. Because the PSR generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations, and given the lack of evidence undermining it, Clifton fails to show that his counsel should have disputed the obstruction of justice enhancement or that any objection or argument would have been successful.

Finally, Clifton claims that his counsel was ineffective because he "acquiesced" to the Government on the loss amount issue. This claim is also meritless. First, Clifton points to nothing undermining the loss amount other than his after-the-fact disagreements with the factual resume. But, as discussed throughout this recommendation, Clifton admitted the veracity of the factual resume and has not given this Court reason to overlook that.

Second, it was a reasonable strategy for Clifton's counsel not to object to the loss amount—which was supported by ample evidence including the factual resume—where counsel was trying to get a downward adjustment or variance based on Clifton's acceptance of responsibility. CR ECF No. 68 at 5-6; CR ECF No. 84 at 24-25.

In sum, Clifton has not shown his counsel was ineffective for failing to dispute his enhancements.

> *(vii)*      *Failure to advise of authority to have the PSR prepared prior to entry of guilty plea, to advise Clifton of his right to the mental evaluation results, to show him the PSR addendum before the sentencing hearing, and to object to the prosecutor's allegedly inaccurate statements*

Clifton alleges that there is authority to have a PSR prepared prior to the acceptance of the guilty plea and that his counsel was ineffective for not advising him of that. But he also admits that, even if his attorney had moved for a pre-guilty-plea PSR, it is uncertain whether the Court and probation office would have gone along with it. CV ECF No. 9 at 5. It is also far from certain that had he received such a report, he would have elected to plead not guilty and proceed to trial on a six-count indictment. He fails, then, to establish prejudice, and this claim is meritless.

Clifton also alleges that, had his counsel told him he had "any right to results of the court-ordered mental evaluation," he would not have pleaded guilty, or he would have received a lesser sentence. He provides no explanation as to why or how the mental competency results impacted his plea decision. And, at any rate, as the Government notes, the record refutes Clifton's claim that he did not know

the results of the competency hearing. Clifton was present during a hearing on the competency issue at which the results of the evaluation were discussed. CR ECF No. 33 at 2. Clifton cannot show prejudice in relation to this claim.

Clifton also claims that his attorney was ineffective for only showing him the PSR addendum at the sentencing hearing. But, again, he shows no prejudice. The Court took a recess so that Clifton could view the addendum, and he told the District Judge under oath that he had no questions about it. CR ECF No. 84 at 3-4. And at any rate, Clifton does not explain what was in the amended PSR that would have altered the course of the proceedings.

Finally, Clifton claims that his attorney should have objected to supposedly inaccurate statements from the Government at the sentencing hearing, specifically that he had been "fired by a previous employer for embezzlement" and that he had tried to contact the victim's wife while detained in the county jail. CV ECF No. 2 at 12.

But Clifton's attorney did dispute that Clifton tried to contact the victim's wife from prison. *See* CR ECF No. 84 at 26-27. And, as for the termination-for-embezzlement argument, Clifton cannot show prejudice from his counsel's failure to object to it because it was only one of several examples of unsavory-if-not-criminal behavior that the Government brought up in response to Clifton's argument that he had no prior criminal history. *See* CR ECF No. 84 at 36. Given the other instances of such behavior, Clifton cannot show that disputing the embezzlement assertion would have swayed the District Judge. Indeed, the District

Judge did not reference Clifton's prior behavior when it imposed Clifton's sentence, focusing instead on the circumstances of Clifton's crime and his lack of remorse. CR ECF No. 84 at 36-37.

B.    Clifton fails to establish that his attorney coerced him into pleading guilty and that his guilty plea was not knowing and voluntary.

In grounds two and three, Clifton argues, in effect, that his guilty plea was involuntary because his counsel coerced him into entering it even after he objected to doing so. More specifically, and with some overlap with his IAC claims, he asserts that his counsel "coerced [him] to sign by pressuring him and his family with threats of a much longer sentence and the expectation of a near "time-served" sentence if he would 'stop being so stubborn' and just sign the plea agreement." CV ECF No. 2 at 7.

Again, these claims go directly against the record evidence. To reiterate, at his rearraignment, Clifton confirmed that:

- No one had threatened him or pressured him in any way to plead guilty. (CR ECF No. 83 at 8.)

- No one had promised him anything (other than what was written in the plea agreement and plea agreement supplement) to get him to plead guilty. (CR ECF No. 83 at 8.)

- He understood that only the Court would determine his guideline range—not his attorney or the Government. (CR ECF No. 83 at 15.)

- He understood that the Court could sentence him above the guideline range and that, by pleading guilty, he could potentially be sentenced up to the statutory maximum. (CR ECF No. 83 at 10, 15.)

- He understood the nature of the charges against him. (CR ECF No. 83 at 4.)

And, in addition to those declarations, in his written plea agreement, Clifton confirmed that his guilty plea was "freely and voluntarily made and [was] not the result of force or threats, or of promises apart from those set forth in this plea agreement," and that "[t]here have been no guarantees or promises from anyone as to what sentence the Court w[ould] impose." CR ECF No. 51 at 6.

As explained, to overcome his sworn testimony, Clifton is tasked with providing "independent indicia of the likely merit of [his] allegations." *Cervantes,* *132 F.3d at 1110.* Clifton's mother provided an unsworn statement in which she claims that her son's attorney tried for some 15 months to get her to convince Clifton to take the plea deal, emphasizing his belief that Clifton would receive a lenient sentence. She pleaded with Clifton to take the plea agreement and asked some of Clifton's other relatives to "literally beg him to sign the plea deal. Again telling them that [Clifton's attorney] said [Clifton] would get time served if he would only sign." CV ECF No. 9 at 12-15.

The statement from Clifton's mother is insufficient to show coercion—on her part or on the part of Clifton's attorney. Even if Clifton's counsel strongly urged him to plead guilty, this is not enough to show coercion because—aside from Clifton's own bald, unsupported, and belated allegations—there is no evidence that his counsel made threats or promises. "'Advice—even strong urging' by counsel

does not invalidate a guilty plea." *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991) (quoting *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976)).

As for coercion from Clifton's mother and other family members, there are no allegations that Clifton's mother or any other family member forced him to take the plea agreement or threatened him. Courts have refused to award habeas relief in such circumstances. *See*, *e.g.*, *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) ("The claim that Fields's family coerced him also fails. While [Fields's attorney] convinced Fields's family to implore him to plead guilty, Fields never alleges that his family members forced or threatened him."); *United States v. Gryzbek*, 283 F. App'x 843, 846 (2d Cir. 2008) ('[A]lleged pressure from [petitioner's] family is an insufficient basis to determine that [his] plea was involuntary.") (citing *Brown v. LaVallee*, 424 F.2d 457, 460-61 (2d Cir. 1970)); *see also Caban v. Rock*, 2008 WL 4178153, at *16 (S.D.N.Y. Sept. 8, 2008) (collecting cases).

Clifton argues that his counsel "scared" him with "warnings of additional jail time if he failed to" plead guilty. CV ECF No. 9 at 10. But Clifton's fear of additional jail time if he proceeded to trial does not make his guilty plea involuntary. *See*, *e.g.*, *Kimble v. Director, TDCJ-CID*, 2021 WL 6750968, at *5 (E.D. Tex. Dec. 20, 2021), *rec. accepted* 2022 WL 256495 (E.D. Tex. Jan. 26, 2022) ("And the prospect of a frightening alternative does not make a guilty plea involuntary; the Supreme Court has expressly held that it is perfectly constitutional for a plea to be motivated 'by fear of the possibility of a greater penalty upon conviction after a trial,' even though

it has a 'discouraging effect' on a defendant's right to a trial.") (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

Clifton also claims that he was coached by his counsel and "saw the events at the plea colloquy as a ritualistic process where both sides pretend there has been no [sic] promises or assurances given of a specific outcome and declarations are made by the defendant in court in exchange for the Court accepting the guilty plea." CV ECF No. 9 at 8. Again, though, this is all belied by the record evidence. Clifton's self-serving, after-the-fact reasons for why this Court should overlook his sworn statements at the rearraignment hearing and in his plea documents are not persuasive. *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) ("Once again, we give the statements during the colloquy greater weight than we give unsupported, after-the-fact, self-serving revisions.").

Finally, Clifton claims that the stress of withdrawing from opiates and losing his home, dignity, and marriage renders his guilty plea involuntary. Clifton's stress throughout the proceedings is insufficient to render his plea involuntary. *See*, *e.g.*, *Boulden v. Janecka*, 2010 WL 11523666, at *15 (D.N.M. Sept. 3, 2010) (citation omitted).

Because Clifton has failed to rebut his sworn testimony and signed documents evincing the knowing, voluntary, and intelligent nature of his guilty plea, the Court should reject his second and third grounds for relief.

C.    Clifton fails to establish that relief is appropriate because of alleged errors in the indictment, factual resume, and PSR.

Clifton claims that the information contained in the indictment, factual resume, and PSR was "materially untrue, inaccurate, or unreliable as it pertained to the chain of events that occurred between November 2015 and March 2017 and my role in said events." CV ECF No. 2 at 8.

To the extent that this is a stand-alone claim that differs from the similar IAC claim addressed previously, it is meritless.

Clifton does not specifically identify any purported inaccuracies in the indictment. As for the claim that there were inaccuracies in the factual resume, as already explained, Clifton cannot overcome his sworn testimony at the plea hearing on this issue where he unambiguously stated that he did not dispute the factual resume.

Finally, Clifton claims that there were errors in the PSR. The Government claims that, because Clifton could have raised this issue on direct appeal but did not, it is procedurally defaulted. It is true that a collateral challenge may not serve as an appeal, and a defendant who raises an issue for the first time on collateral appeal must show both "cause" for the procedural default and "actual prejudice" resulting from the error of which he now complains. *United States v. Frady*, 456 U.S. 152, 165, 167-68 (1982); *see also United States v. Guardado-Mezen*, 2009 WL 2215178, at *10 (S.D. Tex. July 23, 2009) (holding that movant's claim that there

26

were factual inaccuracies in the PSR was procedurally barred where movant failed to present any explanation for his failure to raise the issue on direct appeal).

In response, Clifton argues that he did present this claim in a letter to the Fifth Circuit in response to his appellate counsel's *Anders* motion. *See* CV ECF No. 9 at 17-22.

The Court agrees with the Government that, if Clifton failed to properly raise this claim on direct appeal, it is procedurally defaulted because Clifton makes no effort to show either cause or actual prejudice. But even if Clifton is correct that his letter response to the *Anders* motion raised the claim to the Fifth Circuit, which then considered and rejected it, the claim would still not be cognizable in the § 2255 context because such motions may not relitigate matters already determined on direct appeal. *See*, *e.g.*, *United States v. Coleman*, 2002 WL 1758179, at *3 (N.D. Tex. July 26, 2002) (citing *United States v. Santiago*, 993 F.2d 504, 506 (5th Cir. 1993)).

Further still, as explained above in relation to the similar IAC claim, Clifton has failed to show errors in the PSR. He only provides conclusory allegations in his briefing. *See Ross*, 694 F.2d at 1011-12 and n.5.

Clifton's fourth ground for relief is meritless.

## Conclusion

The Court recommends that Clifton's § 2255 motion be denied.

SO RECOMMENDED.

Signed March 23, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

 A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).